KENTUCKY HOME MUTUAL LIFE IN-
SURANCE COMPANY, Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. 3314.

United States District Court
W. D. Kentucky,
at Louisville.

Aug. 12, 1959.

Charles I. Dawson, Bullitt, Dawson &
Tarrant, Louisville, Ky., for plaintiff.

J. Leonard Walker, former U. S. Atty.,
Charles M. Allen, former Asst. U. S.
Atty., and William B. Jones, U. S. Atty.,
Louisville, Ky., for defendant.

SHELBOURNE, Chief Judge.

The complaint in this action was filed
by the Kentucky Home Mutual Life In-
surance Company against the United
States on March 5, 1957, seeking to re-
cover $18,803.99, with interest from July
19, 1955, the amount of income tax al-
leged by plaintiff to have been erroneous-
ly assessed and collected for the calendar
year 1952. The amount of the tax was
$16,562.72, with interest of $2,241.27,
paid July 21, 1955. The case was tried
to the Court without a jury on May 13,
1959. The essential facts were stipu-
lated by a written stipulation filed Oc-
tober 15, 1958, and the plaintiff intro-
duced four witnesses at the trial.

The question is whether, under Sec-
tion 201 of the Internal Revenue Code of
1939, 26 U.S.C. § 201, deductions of liens
and accumulated interest in final settle-
ment of reinsured Inter-Southern policies
result in taxable income to the reinsurer,
Kentucky Home Mutual Life Insurance
Company, and also whether payments in
cash of interest installments on the
liens, when paid by policyholders, con-
stitute taxable income to the Kentucky
Home Mutual Life Insurance Company in
the year in which the accruing interest
installments were paid.

## Findings of Fact.

From the stipulated facts and the testimony of plaintiff's witnesses adduced at the trial, the Court makes the following findings of fact:

1. Inter-Southern Life Insurance Company was a Kentucky corporation engaged in the life insurance business. For some time prior to April 8, 1932, Inter-Southern had been and was on that date in failing financial condition. Whereupon, the Commissioner of Insurance of Kentucky filed an action in the Circuit Court of Franklin County, Kentucky, for the appointment of a receiver for the assets of that company and for other proper proceedings. In that action it was determined that Inter-Southern's liabilities exceeded its assets by more than $7,000,000 and temporary receivers were appointed. Subsequently, the appointment of the temporary receivers was made permanent and the company's business continued as limited in the court's order. All of the company's assets were taken in possession by the receivers.

2. August 8, 1932, the Franklin Circuit Court authorized the receivers to enter into a contract with the Kentucky Home Life Insurance Company, a Kentucky corporation, by the terms of which Kentucky Home Life and the receivers executed a reinsurance agreement which was approved by the Commissioner of Insurance of Kentucky and by proper orders of the Franklin Circuit Court.

3. Subsequently, on March 9, 1935, the Franklin Circuit Court, by its order, authorized Kentucky Home Life Insurance to reorganize as a mutual life insurance company under Kentucky law, and authorized the new company and the receivers to enter into an amended reinsurance agreement. Kentucky Home Life, under the authority granted to it, was reorganized as a mutual company and its name as reorganized became "Kentucky Home Mutual Life Insurance Company," under which name it has continued and is engaged today.

March 16, 1935, after the Kentucky Home Mutual Life Insurance Company and the receivers of Inter-Southern had entered into the amended reinsurance agreement with the approval of the Commissioner of Insurance of Kentucky and the Franklin Circuit Court, the receivers were discharged, and since that date Kentucky Home Mutual Life Insurance Company has had and administered the business and assets of Inter-Southern.

4. September 18, 1939, under order of the Franklin Circuit Court and with the approval of the Commissioner of Insurance of Kentucky, a second amended reinsurance agreement was entered into and the affairs of Inter-Southern have been administered by the Kentucky Home Mutual Life Insurance Company under the original reinsurance agreement as twice amended. The amendment of September 18, 1939 eliminated the provision contained in Paragraph 4 of the original reinsurance agreement that the lien and its accumulated interest should not be deducted in death settlements and provides that thereafter the lien and accumulated interest thereon should be deducted in all policy settlements, including death settlements.

5. Under the original reinsurance agreement, Kentucky Home Life assumed liability for all of the policies of Inter-Southern at face value less a lien in an amount equal to 60% of the net equity of the existing policies at the time of the original contract. Paragraph 4 of the original reinsurance agreement is as follows:

"Whereas the assets of Inter-Southern hereby and to be hereafter conveyed to the Company are not sufficient at either their actual and/or agreed-on admitted value, as hereinafter stated, to provide for the discharge of the obligations hereby assumed, as part of the consideration there shall be established and placed against each policy reinsured and assumed hereunder by the Company, a lien equal to sixty per cent (60%) of the net equity as hereinafter defined, such lien to bear interest from June 30, 1932, at the rate of six per cent (6%) per an-

num, compounded annually. The liens established herein shall be set up as an asset of the business reinsured hereunder. The term 'net equity' as applied to any policy, is hereby defined as the mean reserve on such policy and on any coupon additions or accumulations standing to the credit thereof as of June 30, 1932, less the sum of any indebtedness and accrued interest thereon to said date. Such mean reserve shall be computed on the basis established by the Inter-Southern for its last annual valuation. Both lien and interest thereon shall be deducted from any payment made by the Company pursuant to the terms of said policies or from any settlement thereunder, or from the value used to purchase any extended insurance, except as otherwise hereinafter provided; however, no deduction on account of such lien or interest shall be made from the amount payable on any death claim arising under any policy reinsured and/or assumed hereunder. All policies reinsured hereunder which are in force at the effective date of this agreement, or which may hereafter be in force as paid-up insurance shall be subject to the aforesaid lien. When the amount of any policy indebtedness and/or lien, with interest thereon, on such paid-up insurance equals or exceeds the reserve thereon, then such paid-up insurance shall cease and determine. All policies reinsured hereunder which are in force at the effective date of this agreement as extended insurance for a specified period, shall be treated as follows: The date of expiry of such extended insurance shall be changed so that the reserve therefor at the effective date of this agreement shall be forty per cent (40%) of the reserve at said date for the then unexpired portion of the original period of extension. Such extended insurance shall be for an amount equal to the death benefit in force at the effective date of this agreement. When any reduction in liens is made effective, the expiry date of any policy still in force as extended or continued insurance at the effective date of such reduction, shall be further extended by application thereto of the share of said policy in said reduction. No such policy which shall have expired before the effective date of such reduction in lien shall have any participation by extension, credit, or otherwise, in such reduction."

6. It will be noted that a provision of the above paragraph is, "The liens established herein shall be set up as an asset of the business reinsured hereunder." The 60% lien of the net equity was to bear interest from June 30, 1932 at the rate of 6% per annum and this interest compounded annually. All of the policies were subject to the 60% lien, with the right to the policyholder to discharge the lien to Kentucky Home Mutual Life by payment of the amount of the lien plus any interest accrued and thereby be entitled to receive the full face amount of the policy as a death benefit, or he could surrender the policy and have the amount of the lien plus any accrued interest offset against the proceeds. The 60% lien under the reinsurance agreement, however, did not represent an obligation on the part of the policyholder to Kentucky Home Mutual Life. In effect, it represented that portion of the policy obligation of the Inter-Southern which the respective policyholder agreed himself to carry. Any payment which an Inter-Southern policyholder paid on the lien against his policy and the accumulated interest thereon automatically increased by that exact amount the amount which Kentucky Home Mutual Life was required to pay as a death benefit or upon surrender of the policy for its loan or cash surrender value.

During the calendar year 1952, Kentucky Home Mutual Life deducted in policy settlements of Inter-Southern policies the amount of $61,271.28, representing

the aggregate of accumulated interest on the liens on the policies in respect of which such settlements were made. In the taxable year 1952, the holders of reinsured Inter-Southern policies paid to the plaintiff $6,731.26 as interest accumulated on the lien against their respective policies.

The Court finds that neither the $61,271.28 deducted in policy settlements nor the $6,731.26 paid Kentucky Home Mutual Life as interest constituted income to Kentucky Home Mutual Life in the taxable year 1952.

7. It was stipulated that the Kentucky Home Mutual Life keeps its books and makes its federal income tax returns upon the calendar year basis, and that for the calendar year 1952 it filed its income tax return and paid the tax shown by that return to be due. In reporting its income for that year, it did not include as income the $61,271.28 deducted in policy settlement or the $6,731.26 interest paid by the Inter-Southern policyholders.

8. The Commissioner of Internal Revenue, upon an examination of Kentucky Home Mutual Life's 1952 income tax return, determined that the sums deducted in policy settlements and received as interest on liens both constituted income which had been erroneously omitted from the 1952 return. A deficiency in tax was assessed amounting to $16,562.27. This amount was paid by Kentucky Home Mutual Life on July 21, 1955, at which time interest in the sum of $2,241.27 had accrued on the assessment, making an aggregate of $18,803.99.

9. December 23, 1955, Kentucky Home Mutual Life filed its claim for a refund of said tax and interest, which the authorities of the Internal Revenue Department declined to pay.

### Conclusions of Law.

The Court makes the following conclusions of law:

1. This Court has jurisdiction of this action and of the parties. Title 28, Section 1346(a)(1), United States Code Annotated.

2. Section 201 of the Internal Revenue Code of 1939 defines income of a life insurance company as follows:

"Gross income. The term 'gross income' means the gross amount of income received during the taxable year from interest, dividends, and rents."

3. The assessment of income tax on the amount of $61,271.28 deducted in policy settlements in the year 1952 and on the amount of $6,731.26 interest on liens on Inter-Southern policies paid to Kentucky Home Mutual Life during the calendar year 1952 was erroneous.

4. The collection by the Internal Revenue Department of $18,803.99, representing the tax assessed and interest paid July 21, 1955, was wrongful and plaintiff is entitled to recover said sum with such interest thereon as may be allowed by law. An appropriate judgment in accordance with this conclusion will be submitted by counsel for plaintiff on notice, in accordance with the local rules of this Court.